IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dominique Turner, individually and as next friend of her minor children, TJ1, TJ2, TJ3, and TJ4, | ) ) ) |
| *Plaintiff,* | ) ) |
| | ) No. _____ |
| -vs- | ) |
| | ) *(jury demand)* |
| City of Chicago, David Alvarez, Jr., #16131, Bradley Anderson, #15660, Samuel Angel, #16501, Lucas Boyle, #12059, Cornelius Brown, #2235, Anthony Bruno, #1123, Brandon Campbell, #6278, Yvette Carranza, #13435, Danielle Cusimano, #16619, Emilio De Leon, #16360, Dervis Demirovic, #15664, Danielle Dunn, #9615, Damien Enoch, #12694, Dominic Ferro, #17503, Victor Guebara, #17147, Steven Holden, #8149, Andrew Khalifeh, #9557, Charles McClay, #4735, Aaron McClelland, #9164, Marco Mendoza, #1362, Antonio Miranda, #8264, Sean Ryan, #13198, Hugo Sanchez, #14269, Carlos Santamaria, #9919, Dimar Vasquez, #17910, Bryan Vielman, #18705, Curtis Weathersby, #7866, Scott Westman, #18472, and Russel Willingham, #511, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) ) |

# COMPLAINT

This case concerns illegal and harassing home invasions conducted by Chicago police officers. Plaintiff explains below how officers terrorized plaintiff and her minor children in two illegal raids that violated the United States Constitution and the federal Fair Housing Act. The officers acted pursuant to widespread policies and practices of defendant City of Chicago

that Chicago Police Superintendent David O. Brown acknowledged in a public statement on January 20, 2021.

Plaintiff files this lawsuit individually and for her four minor children to seek a remedy for this wrongdoing, and, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983 and 42 U.S.C. § 3617. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. §3613.

2. Plaintiff Dominique Turner and her four minor children, TJ1, TJ2, TJ3, and TJ4 are residents of the Northern District of Illinois.

3. At the time of the events alleged in this complaint, TJ1 was 15 years old, TJ2 was 13 years old, and twins TJ3 and TJ4 were each 1 year old.

4. Plaintiff and her minor children are Black.

5. Plaintiff brings claims on her own behalf and for her minor children arising out of two illegal raids by Chicago police officers of plaintiff's dwelling in the 6800 block of South Dorchester Avenue in Chicago.

6. Plaintiff and her minor children lived in the second-floor unit at the time of the events alleged in this complaint.

7. The residents of the first-floor unit are the plaintiffs in a pending lawsuit about the raids, *Archie v. Chicago*, 19-cv-4838.

8. Defendant City of Chicago is an Illinois municipal corporation.

9.     Defendants David Alvarez, Jr., #16131, Bradley Anderson, #15660, Samuel Angel, #16501, Lucas Boyle, #12059, Cornelius Brown, #2235, Anthony Bruno, #1123, Brandon Campbell, #6278, Yvette Carranza, #13435, Danielle Cusimano, #16619, Emilio De Leon, #16360, Dervis Demirovic, #15664, Danielle Dunn, #9615, Damien Enoch, #12694, Dominic Ferro, #17503, Victor Guebara, #17147, Steven Holden, #8149, Andrew Khalifeh, #9557, Charles McClay, #4735, Aaron McClelland, #9164, Marco Mendoza, #1362, Antonio Miranda, #8264, Sean Ryan, #13198, Hugo Sanchez, #14269, Carlos Santamaria, #9919, Dimar Vasquez, #17910, Bryan Vielman, #18705, Curtis Weathersby, #7866, Scott Westman, #18472, and Russel Willingham, #511, were at all relevant times acting under color of their officers as Chicago police officers; they are sued in their individual capacities only.

**Raid of February 8, 2019**

10.     Defendants Anderson and Westman obtained the warrant for the raid on February 8, 2019. Anderson and Westman and defendants Alvarez, Angel, Brown, Bruno, Carranza, De Leon, Demirovic, Dunn, Enoch, Ferro, Guebara, Holden, Khalifeh, McClay, Mendoza, Santamaria, Vasquez, Vielman, Weathersby, and Willingham ("February 8, 2019 Officers") participated in the search.

11.     At all relevant times, only an incompetent police officer could have believed that there was probable cause to obtain the warrant.

12.     Plaintiff Turner was not present during the February 8, 2019 raid.

13.     TJ1, TJ2, TJ3, and TJ4 were present during the February 8, 2019 raid.

14.     The officers recorded portions of the raid on video.

15.     As appears more fully in the video of the raid:

    a.  One or more of the February 8, 2019 Officers unreasonably detained TJ1, TJ2, TJ3, and TJ4 and each of the other February 8, 2019 Officers failed to intervene to prevent the violation of rights.

    b.  One or more of the February 8, 2019 Officers pointed a weapon at TJ1 and each of the other February 8, 2019 Officers failed to intervene to prevent the violation of rights.

    c.  One or more of the February 8, 2019 Officers illegally entered plaintiff Turner's apartment and each of the other February 8, 2019 Officers failed to intervene to prevent the violation of rights.

    d.  One or more of the February 8, 2019 Officers illegally searched plaintiff Turner's apartment and each of the other February 8, 2019 Officers failed to intervene to prevent the violation of rights.

16.     One or more of the February 8, 2019 Officers searched plaintiff Turner's apartment in an unreasonable manner causing damages to plaintiff's possessions and each of the other February 8, 2019 Officers failed to intervene to prevent the violation of rights.

### Raid of April 25, 2019

17.     Defendant Anderson obtained the warrant for the second search on April 25, 2019. Anderson and defendants Angel, Boyle, Bruno, Campbell, Cusimano, McClelland, Miranda, Ryan, Sanchez, and Weathersby (the "April 25, 2019 Officers") participated in the search.

18.     Plaintiff Turner was not present during the April 25, 2019 raid.

19.     TJ1, TJ3, and TJ4 were present during the April 25, 2019 raid.

20.     The officers recorded portions of the raid on video.

21.     As appears more fully in the video of the raid:

      a.     One or more of the April 25, 2019 Officers unreasonably detained TJ1, TJ3, and TJ4 and each of the other April 25, 2019 Officers failed to intervene to prevent the violation of rights.

      b.     One or more of the April 25, 2019 Officers pointed a weapon at TJ1 and each of the other April 25, 2019 Officers failed to intervene to prevent the violation of rights.

c. One or more of the April 25, 2019 Officers illegally entered plaintiff Turner's apartment and each of the other April 25, 2019 Officers failed to intervene to prevent the violation of rights.

d. One or more of the April 25, 2019 Officers illegally searched plaintiff Turner's apartment and each of the other April 25, 2019 Officers failed to intervene to prevent the violation of rights.

e. One or more of the April 25, 2019 Officers searched plaintiff Turner's apartment in an unreasonable manner causing damage to plaintiff's possessions and each of the other April 25, 2019 Officers failed to intervene to prevent the violation of rights.

## I. Constitutional Claims Against Individual Defendants

22. As a result of the above-described conduct by the individual defendants, plaintiff and her minor children were deprived of rights secured by the Fourth and Fourteenth Amendments and incurred damages.

23. The individual defendants were driven by evil motive or intent and acted with reckless or callous indifference to the federally protected rights of plaintiff and her minor children.

## II.    Constitutional Claims Against Defendant City of Chicago

24.    The above-described conduct of the individual defendants was carried out as a result of policies and widespread practices of defendant City of Chicago, including the following:

### A. Code of silence

25.    At all relevant times, the City of Chicago has known of and has encouraged a "code of silence" among its police officers.

26.    As summarized by the United States Department of Justice in its official report entitled *Investigation of the Chicago Police Department*, January 13, 2017, at 75:

  a.    "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

  b.    "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

  c.    "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence

everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

27.     The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

28.     Defendant Chicago's Superintendent of Police acknowledged that the "code of silence" continues to exist in public comments in October 2020.

### B. Excessive Force Against Children of Color

29.     At all relevant times, the City of Chicago has known of and has failed to end the widespread use by Chicago police officers of excessive force against children of color, which often includes pointing guns at children.

30.     The 2016 report of the official Chicago Police Accountability Task Force concluded that Chicago police officers are not adequately trained or equipped to interact with youth. *Police Accountability Task Force Report* at 55,

31.     The United States Department of Justice, in its official report entitled "Investigation of the Chicago Police Department," determined that the Chicago Police Department has a pattern and practice of using excessive force against children for non-criminal conduct. "Investigation of the Chicago Police Department," January 13, 2017, at 34-35

32.     After receiving the above-described notice of its widespread practice, the City of Chicago turned a blind eye to the continued constitutional wrongdoing and refused to adopt policies or implement training to end the pattern and practice of using excessive force against children.

33.     Rather than correct its widespread practice of constitutional wrongdoing, defendant City of Chicago has consistently failed to discipline officers who used excessive force against children, thereby authorizing, encouraging, and emboldening officers to use excessive force against children.

### C. Defective Official Directive

34.     At all relevant times, the City of Chicago's directive on search warrants, Special Order S04-19, encourages police officers to avoid verifying and corroborating information upon which they rely in seeking a search warrant.

35.     In a letter dated January 20, 2021, Chicago Police Superintendent David O. Brown, acting in his official capacity and speaking on behalf of defendant City of Chicago, acknowledged the gaps in the City's directive on search warrants, stating that defendant City of Chicago's policies "should be amended to require a CPD member investigate and verify the information used to substantiate a search warrant."

### D. Lack of Discipline After Unconstitutional Raids

36.    At all relevant times, the City of Chicago has maintained a discipline system that is designed to sweep under the rug unconstitutional conduct that occurs during execution of search warrants.

37.    In a letter dated January 20, 2021, Chicago Police Superintendent David O. Brown, acting in his official capacity and speaking on behalf of defendant City of Chicago, acknowledged the shortcomings of the disciplinary system, stating that defendant City of Chicago "intends to amend its order to expand the circumstances where officers are required to open a [misconduct] investigation."

### III.    Claim under Federal Fair Housing Act

38.    The individual defendants engaged in the above-described unconstitutional conduct in conformance with defendant City of Chicago's practice of concentrating illegal and abusive home searches in minority neighborhoods such as the Grand Crossing neighborhood (96% Black) where plaintiff resided at the time of the events alleged in this complaint.

39.    Data from 2016 through 2019 shows that the vast majority of "negative" raids by Chicago police officers—those that fail to result in an arrest—target homes in minority neighborhoods.

40.     The Office of the Illinois Attorney General acknowledged the racial disparity in defendant City of Chicago's searches in a letter sent to the City of Chicago Law Department on September 25, 2020:

> The right to be secure in one's home is at the core of the Fourth Amendment. There is scarcely a more violent invasion of that right than to have police officers break into a home based on bad information and hold a family, including young children, at gunpoint. The OAG is disturbed by the ongoing and well-documented accounts of CPD raids involving mistaken addresses, incorrect information, excessive force, verbal abuse, pointing guns directly at young children and their parents, and accounts of disrespect and avoidable escalation against Chicago families in their own homes. These issues are exacerbated by evidence that they disproportionately affect Black, Brown, and economically disadvantaged neighborhoods.

41.     As a result of the City's practice of concentrating illegal and abusive home searches in minority neighborhoods, the individual police officer defendants interfered with plaintiff and her four minor children in the enjoyment of their dwelling because of race in violation of 42 U.S.C. § 3617.

42.     Plaintiff Turner, on behalf of herself and her minor children hereby demands trial by jury.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against the individual defendants and in favor of plaintiff and her minor children, that appropriate compensatory damages

only be awarded against defendant City of Chicago, and that the Court grant

reasonable fees and costs.

> /s/ <u>Joel A. Flaxman</u>
> Joel A. Flaxman
> ARDC No. 6292818
> Kenneth N. Flaxman
> 200 S Michigan Ave Ste 201
> Chicago, IL 60604-2430
> (312) 427-3200
> *Attorneys for Plaintiff*